IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| David Catanzaro, | : | |
| Plaintiff, | : | Case No. 1:13-cv-00996 |
| v. | : | Judge Polster |
| Seaman Garson LLC/LLP, et al., | : | Magistrate Judge White |
| Defendants. | : | |

### PLAINTIFF'S RESPONSES TO FIRST DISCOVERY REQUESTS OF DEFENDANTS SEAMAN GARSON AND JAMES DEROCHE

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, plaintiff, David Catanzaro, hereby submits his responses and objections to "Defendants Seaman Garson, LLC and James A. DeRoche's First Set of Interrogatories, Request for Production of Documents, and Requests for Admission to Plaintiff" (the "Discovery Requests").

### GENERAL RESPONSES AND OBJECTIONS

1. Mr. Catanzaro objects to the Discovery Requests to the extent they seek the disclosure of information which is protected by the attorney-client privilege, the work product doctrine or which is otherwise privileged or protected from disclosure, and will not disclose such information.

2. Mr. Catanzaro objects to the Discovery Requests to the extent they seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.



EXHIBIT 1

3.  Mr. Catanzaro states that he is responding to the Discovery Requests to the best of his present knowledge, information and belief, and expressly reserves the right to supplement his responses herein, if necessary.

4.  In providing responses to the Discovery Requests, Mr. Catanzaro does not waive and expressly reserves all objections as to competency, relevancy, materiality, and admissibility of the answers as well as all objections to any other discovery request.

Subject to the foregoing objections, and to the particularized objections set forth below, Mr. Catanzaro responds as follows:

## SPECIFIC RESPONSES AND OBJECTIONS

## REQUESTS FOR ADMISSION

### REQUEST NO. 1

Admit that you personally signed the terminal disclaimer, a copy of which is attached hereto as Exhibit 1, on August 27, 2001.

**ANSWER:** Although Mr. Catanzaro does not remember signing the terminal disclaimer, he admits that it bears his signature. (Upon seeing the document in May 2012, Mr. Catanzaro's only recollection was that the examiner had said it was required to avoid a double patenting rejection for what became the '959 patent.) Mr. Catanzaro objects to this request to the extent that it implies that this signature affects his claims in this case in any way. The terminal disclaimer was among several hundreds of pages in the PTO files for the '532 and '959 patents. Mr. Catanzaro is not an attorney, and relied on Mr. Porter, Mr. DeRoche, and Seaman Garson to recognize and advise him of the implications of the sale of the '532 patent.

**REQUEST NO. 2**

Admit that you personally mailed the signed terminal disclaimer, a copy of which is attached hereto as Exhibit 1, to the U.S. Patent and Trademark Office on September 1, 2001.

**ANSWER:** Although Mr. Catanzaro does not remember mailing the terminal disclaimer, he admits that it bears his signature and appears in the PTO file for the '959 patent. But Mr. Catanzaro objects to this request to the extent that it implies that mailing the terminal disclaimer affects his claims in this case in any way. The terminal disclaimer was among several hundreds of pages in the PTO files for the '532 and '959 patents. Mr. Catanzaro is not an attorney, and relied on Mr. Porter, Mr. DeRoche, and Seaman Garson to recognize and advise him of the implications of the sale of the '532 patent.

**REQUEST NO. 3**

Admit that you read the contents of the terminal disclaimer, a copy of which is attached hereto as Exhibit 1, prior to signing and mailing the same.

**ANSWER:** Mr. Catanzaro cannot accurately admit or deny this request, as he does not recall whether or not he specifically read the terminal disclaimer before it was signed nearly thirteen years ago. Mr. Catanzaro objects to this request to the extent that it implies that whether or not he read the terminal disclaimer affects his claims in this case in any way. The terminal disclaimer was among several hundreds of pages in the PTO files for the '532 and '959 patents. Mr. Catanzaro is not an attorney, and relied on Mr. Porter, Mr. DeRoche, and Seaman Garson to recognize and advise him of the implications of the sale of the '532 patent.

**REQUEST NO. 4**

Admit that you have never manufactured any products for sale, either personally or in connection with another entity, that were covered by the 532 or the 959 Patents.

**ANSWER:** Admitted.

3

**REQUEST NO. 5**

Admit that all funds you have received as a result of the 532 Patent have resulted from your claims of patent infringement against individuals and/or business entities.

**ANSWER:** Admitted.

**REQUEST NO. 6**

Admit that all funds you have received as a result of the 959 Patent have resulted from your claims of patent infringement against individuals and/or business entities.

**ANSWER:** Admitted.

**REQUEST NO. 7**

Admit that the complaint you filed *pro se* in the U.S. District Court for the Middle District of Pennsylvania captioned *David Catanzaro v. Procter and Gamble, et al.*, Case No. 3:08cv02231, alleged only infringement of the 532 Patent, and did not allege infringement of the 959 Patent.

**ANSWER:** Admitted.

**REQUEST NO. 8**

Admit that you did not retain Mr. DeRoche to pursue claims of infringement of the 959 Patent in the Underlying Case.

**ANSWER:** Mr. Catanzaro cannot accurately admit or deny this request. Mr. Catanzaro retained and relied on Mr. Porter, Mr. DeRoche, and Seaman Garson to represent his interests in the patent matter involving Proctor & Gamble and take all appropriate steps to represent those interests. When Mr. Catanzaro retained Mr. DeRoche, the '959 patent had not yet issued. The '959 patent issued in 2010 and Mr. DeRoche was informed of it after its issue, and while the P&G lawsuit was still pending. Mr. Catanzaro relied on Mr. Porter, Mr. DeRoche, and Seaman & Garson to decide strategy for the P&G lawsuit, and whether or not to amend the complaint to

allege infringement of the '959 patent would have been within the scope of those strategic decisions.

**REQUEST NO. 9**

Admit that Mr. DeRoche never indicated at any point in time that he would represent you with regard to any claim or issue relating to the 959 Patent.

**ANSWER:** Denied.

**REQUEST NO. 10**

Admit that you did not inform Mr. DeRoche or Mr. Porter of the existence of the 959 Patent at any time during 2009.

**ANSWER:** Admitted, but Mr. Catanzaro objects to any implication that he could have done so because the '959 patent did not issue until 2010.

**REQUEST NO. 11**

Admit that you did not inform Mr. DeRoche or Mr. Porter of the existence of the 959 Patent at any time during 2010.

**ANSWER:** Denied.

**REQUEST NO. 12**

Admit that prior to signing the February 25, 2011 Patent Purchase, Assignment, and Settlement Agreement you did not inform Mr. DeRoche or Mr. Porter that you had signed and filed the terminal disclaimer, a copy of which is attached hereto as Exhibit 1.

**ANSWER:** Admitted. But Mr. Catanzaro objects to this request to the extent that it implies the terminal disclaimer affects his claims in this case in any way. The terminal disclaimer was among several hundreds of pages in the PTO files for the '532 and '959 patents.

5

Mr. Catanzaro is not an attorney, and relied on Mr. Porter, Mr. DeRoche, and Seaman Garson to recognize and advise him of the implications of the sale of the '532 patent.

### REQUEST NO. 13

Admit that Mr. Porter attended the February 14, 2011 mediation with you in the Underlying Case.

**ANSWER:** Admitted

### REQUEST NO. 14

Admit that Mr. DeRoche did not attend the February 14, 2011 mediation in the Underlying Case.

**ANSWER:** Denied. Although not physically present, Mr. DeRoche attended the mediation by keeping in touch through telephone and actively advising Mr. Catanzaro throughout the entire process.

### REQUEST NO. 15

Admit that at the February 14, 2011 mediation in the Underlying Case you rejected the idea of licensing the 532 Patent to settle the claims in the Underlying Case, and instead insisted on an assignment of the 532 Patent.

**ANSWER:** Admitted, but Mr. Catanzaro objects to this request to the extent it implies this was the first Mr. Porter, Mr. DeRoche, and Seaman Garson knew Mr. Catanzaro wished to sell the '532 patent; they knew well before the mediation, and never advised Mr. Catanzaro that an assignment could jeopardize his rights in the '959 patent.

### REQUEST NO. 16

Admit that you did not seek or request Mr. DeRoche's advice about any terms reached at the February 14, 2011 mediation prior to the mediation concluding.

**ANSWER:** Denied.

**REQUEST NO. 17**

Admit that Mr. DeRoche never advised you to sell or assign your rights in the 532 Patent to Church & Dwight.

**ANSWER:** Denied.

**REQUEST NO. 18**

Admit that since signing the February 25, 2011 Patent Purchase, Assignment, and Settlement Agreement you have entered into settlement agreements with alleged infringers of the 959 Patent.

**ANSWER:** Admitted.

**REQUEST NO. 19**

Admit that despite your allegation in paragraph 26 of your Complaint that "Catanzaro was informed by the attorney for Elmer's that he had lost his rights in the 959 Patent because Church & Dwight had purchased the 532 Patent, thus rendering the 'Continuation Patent' unenforceable," you executed a settlement agreement with Elmer's for alleged infringement of the 959 Patent pursuant to which Elmer's paid you $45,000.

**ANSWER:** Mr. Catanzaro cannot give an unqualified answer to this request. Mr. Catanzaro admits that he executed the described settlement with Elmer's, but cannot admit that it was "despite" the allegation in Paragraph 26 of the Complaint. Elmer's knew that Mr. Catanzaro had owned the '532 patent during the time when it was manufacturing products infringing the '959 patent and that Mr. Catanzaro was going to try to get the '532 patent back.

**REQUEST NO. 20**

Admit that after filing your Complaint in this action on May 2, 2013, you entered into an agreement and/or release with Larose Industries, LLC pursuant to which Larose paid you $5,000 to settle your claims that Larose Industries, LLC was infringing on the 959 Patent.

7

**ANSWER:** Mr. Catanzaro cannot give an unqualified answer to this request. Mr. Catanzaro admits that he entered into the described agreement with Larose, but settlement negotiations were well under way before Mr. Catanzaro filed the complaint in this case. The settlement amount of $5,000.00 was acknowledged as of May 9, 2013, just one week after the complaint was filed. It is therefore likely that Larose Industries conducted any background research or due diligence before May 2, 2013.

**REQUEST NO. 21**

Admit that after filing your Complaint in this action on May 2, 2013, you entered into a settlement agreement on June 7, 2013 with Avon Products, Inc., pursuant to which Avon paid you $25,000 to settle your claims that Avon Products, Inc. was infringing on the 959 Patent.

**ANSWER:** Mr. Catanzaro cannot give an unqualified answer to this request. Mr. Catanzaro admits that he entered into the described settlement with Avon, but settlement negotiations were well under way before Mr. Catanzaro filed the complaint in this case. The settlement amount of $22,000.00 was acknowledged as of May 17, 2013, just two weeks after the complaint was filed. It is therefore likely that Avon conducted any background research or due diligence before May 2, 2013.

**REQUEST NO. 22**

Admit that you have never filed a lawsuit against any individual or entity for alleged infringement of the 959 Patent.

**ANSWER:** Admitted.

**REQUEST NO. 23**

Admit that no court has ever adjudicated or otherwise ruled that the 959 Patent is invalid or unenforceable.

**ANSWER:** Admitted.

**REQUEST NO. 24**

Admit that the U.S. Patent and Trademark Office has never issued a written opinion, ruling, or order declaring the 959 Patent to be invalid or unenforceable.

**ANSWER:** Admitted, though Mr. Catanzaro is unaware that he would have any standing to seek such a determination.

**REQUEST NO. 25**

Admit that the U.S. Patent Trial and Appeal Board has never issued a written opinion, ruling, or order declaring the 959 Patent to be invalid or unenforceable.

**ANSWER:** Admitted, though Mr. Catanzaro is unaware that he would have any standing to seek such a determination.

**26.** Admit that, not including this case, no individual or entity has ever sought a ruling from a court, the U.S. Patent and Trademark Office, or the U.S. Trial and Appeal Board regarding the validity or enforceability of the 959 Patent.

**ANSWER:** Admitted.

## INTERROGATORIES

### INTERROGATORY NO. 1

State the date on which you first informed Mr. DeRoche of the existence of the 959 Patent.

**ANSWER:** As best Mr. Catanzaro can remember, it was before December 29, 2010 but he cannot remember the specific date before.

### INTERROGATORY NO. 2

State the date on which you first informed Mr. DeRoche that you had signed and filed the terminal disclaimer attached hereto as Exhibit 1.

**ANSWER:** May 7, 2012.

### INTERROGATORY NO. 3

State the date on which you first informed Mr. Porter of the existence of the 959 Patent.

**ANSWER:** As best Mr. Catanzaro can remember, it was before December 29, 2010 but he cannot remember the specific date before.

### INTERROGATORY NO. 4

State the date on which you first informed Mr. Porter that you had signed and filed the terminal disclaimer attached hereto as Exhibit 1.

**ANSWER:** At least as early as May 21, 2012.

### INTERROGATORY NO. 5

5. State the nature and amount of all damages that you claim were caused by the alleged malpractice described in your Complaint.

**ANSWER:** The nature of damages includes economic loss from the ability to sell, license, or enforce the '959' patent, economic loss in the event any already-completed license or

10

settlement agreement for the '959 patent is undone, and the emotional distress and inconvenience caused by the defendants' actions. Mr. Catanzaro has not calculated a precise amount for damages; the amount is a decision for the jury or Court.

**INTERROGATORY NO. 6**

For each written or recorded statement of any person taken by you or on your behalf regarding the allegations made in Plaintiff's Complaint, identify the statement by the name of the declarant and the date the statement was taken.

**ANSWER:** Mr. Catanzaro has no written or recorded statements.

**INTERROGATORY NO. 7**

For each settlement and/or release agreement you have entered into as a result of claims by you that an individual or entity was infringing on the 959 Patent, provide the following information:

    (a)    The name of the alleged infringing individual or entity;
    (b)    The date the settlement and/or release agreement was executed; and
    (c)    The amount of money paid to you in consideration for the agreement.

**ANSWER:** This information is reflected in the settlement agreements and licenses already produced to defendants.

**INTERROGATORY NO. 8**

For each individual or entity against whom you or your attorney has made written allegations of patent infringement of the 959 Patent, but who has refused to pay you money to settle the claims, identify each such individual or entity by name, address, and the date on which the claim of infringement was first made.

    **ANSWER:**    Poof-Slinky, LLC
                      4280 South Haggerty Road
                      Canton, Michigan 48188
                      Phone: 1-800-829-9502

      HOWSON & HOWSON LLP
      Stanley B. Kita
      501 Office Center Drive
      Suite 210
      Fort Washington, Pennsylvania 19034
      Phone: 215-540-9202

  Stanley B. Kita of Howson & Howson LLP, is the attorney for Poof-Slinky, LLC. Mr. Catanzaro specifically informed him that Poof-Slinky, LLC was infringing on the '959 patent on April 5, 2013. Although Mr. Kita was contacted prior to April 5, 2013 with regard to an infringement matter, it wasn't until April 5, 2013 that Mr. Catanzaro identified the '959 patent specifically. Mr. Kita initially suggested settling the matter for about $6,000 or 2.5% of the total earnings from the infringing products, but took this offer off the table once he learned of the terminal disclaimer. Mr. Kita refused any further discussions.

## INTERROGATORY NO. 9

  Identify by name, business address, and phone number all attorneys you retained to aid in pursuing any of the claims identified in your answers to Interrogatory Nos. 5 and 6.

  **ANSWER:**  Interrogatory Nos. 5 and 6 pertain only to the claims in this case.

## INTERROGATORY NO. 10

  If you have filed a lawsuit against any individual or entity for alleged infringement of the 959 Patent, identify the court in which each case was filed and the corresponding case number(s) assigned.

  **ANSWER:**  None.

## INTERROGATORY NO. 11

  Identify by name, business address, and telephone number each expert witness you intend to call at the trial of this matter or upon whose opinions you intend to rely for purposes of dispositive motions, including the subject matter upon which each expert is expected to testify and the basis therefore.

**ANSWER:** Mr. Catanzaro has not yet identified the expert witnesses he will call at trial. Mr. Catanzaro will supplement this answer in accordance with the case schedule.

## INTERROGATORY NO. 12

Identify each exhibit or other demonstrative item which you intend to introduce as evidence at the trial of this matter.

**ANSWER:** Mr. Catanzaro has not yet identified these items. Mr. Catanzaro will supplement this answer in accordance with the case schedule.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST NO. 1

All communications, including but not limited to emails and correspondence, sent to or received by Plaintiff regarding the Underlying Case. This includes, but is not limited to, all communications between Plaintiff, Mr. DeRoche, and/or Mr. Porter.

**RESPONSE:** Defendants already have these materials and produced them in this case. It is unduly burdensome to require Mr. Catanzaro to produce these materials back to the defendants and he objects to doing so.

### REQUEST NO. 2

All written or recorded statements, weather transcribed or in audio form, regarding the Underlying Case, including but not limited to written or recorded statements of Mr. DeRoche, Mr. Porter and/or Plaintiff.

**RESPONSE:** To the extent defendants define such "statements" would include emails or letters, defendants already have these materials and produced them in this case. It is unduly burdensome to require Mr. Catanzaro to produce these materials back to the defendants and he objects to doing so. Mr. Catanzaro has no other written or recorded statements.

### REQUEST NO. 3

All materials in your possession regarding the 532 Patent, including but not limited to any "file" you have maintained regarding the 532 Patent, and all filings and correspondence with the U.S. Patent and Trademark Office or any other governmental entity.

**RESPONSE:** Mr. Catanzaro is producing the PTO file for the '532 patent; Mr. Catanzaro already delivered all other documents relating to the '532 patent to his attorneys in the P&G case.

14

**REQUEST NO. 4**

All materials in your possession regarding the 959 Patent, including but not limited to any "file" you have maintained regarding the 959 Patent, and all filings and correspondence with the U.S. Patent and Trademark Office or any other governmental entity.

**RESPONSE:** Mr. Catanzaro is producing the PTO file for the '959 patent. Mr. Catanzaro is locating and will produce additional responsive materials in his possession.

**REQUEST NO. 5**

To the extent not produced in response to a prior request, all materials in your possession relating to the terminal disclaimer, a copy of which is attached hereto as Exhibit 1. This includes, but is not limited to, any communications between you and the U.S. Patent and Trademark Office or any other governmental entity.

**RESPONSE:** The only materials regarding the terminal disclaimer would appear in the materials to be produced in response to Request Numbers 3 and 4.

**REQUEST NO. 6**

All non-privileged communications, including but not limited to emails and correspondence, sent to or received by Plaintiff regarding the claims asserted in your Complaint. This includes, but is not limited to, all communications relating to any attempt to reacquire the 532 Patent or enforce the 959 Patent.

**RESPONSE:** Mr. Catanzaro is locating and will produce responsive documents, save for the correspondence between Mr. Catanzaro, Mr. Porter, and Mr. DeRoche after Mr. Catanzaro learned that the terminal disclaimer prevented him from enforcing the '959 patent after the sale of the '532 patent. Defendants already have those materials and have produced them in this case; Mr. Catanzaro objects to producing them back.

## REQUEST NO. 7

7. All materials, including but not limited to communications with Mr. DeRoche or Mr. Porter, relating to the settlement of the Underlying Case.

**RESPONSE:** Defendants already have these materials and produced them in this case. It is unduly burdensome to require Mr. Catanzaro to produce these materials back to the defendants and he objects to doing so.

## REQUEST NO. 8

All settlement, release, and/or other agreements entered into between Plaintiff and any individual or entity alleged to have infringed on the 532 Patent.

**RESPONSE:** The only such agreement is the settlement agreement from the P&G case, which plaintiff has already produced.

## REQUEST NO. 9

All settlement, release, and/or other agreements entered into between Plaintiff and any individual or entity alleged to have infringed on the 959 Patent.

**RESPONSE:** Plaintiff has already produced these agreements.

## REQUEST NO. 10

All communications, including but not limited to emails and correspondence, between (a) Plaintiff or his counsel, and (b) any individual or entity (or counsel for the same) that Plaintiff has claimed infringed on the 959 Patent, regardless of whether the entity agreed to settle Plaintiff's claims.

**RESPONSE:** Mr. Catanzaro objects to producing these materials as they are not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

16

**REQUEST NO. 11**

All W-2 forms, income and payroll statements, and federal, state, and local tax returns for the last 10 years, including 2013.

**RESPONSE:** This request is overly broad and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Mr. Catanzaro objects to producing the requested documents.

**REQUEST NO. 12**

All documents relating in any way to any claim for damages being brought by Plaintiff in this case including, but not limited to, evidence of damages.

**RESPONSE:** Mr. Catanzaro has already produced some of these documents (specifically, the settlement agreements with various infringers of the '959 patent). To the extent Mr. Catanzaro receives additional documents relating to his claim for damages, he will produce them.

**REQUEST NO. 13**

All reports and curriculum vitae of any expert witness that you intend to use at the trial, hearing, or mediation of this case, or on whose testimony you intend to rely for purposes of dispositive motions.

**RESPONSE:** Mr. Catanzaro has not yet identified such experts and will provide these materials in accordance with the case schedule.

**REQUEST NO. 14**

Any and all documents, records, articles, publications and/or other documentation that forms the basis, in whole or in part, for the opinions of your experts who may testify at the trial, hearing, or mediation of this matter, or on whose testimony you intend to rely for purposes of dispositive motions.

**RESPONSE:** Mr. Catanzaro has not yet identified such experts and will provide these materials in accordance with the case schedule.

## REQUEST NO. 15

Any and all documents or tangible things identified in, relating to, supporting, or reviewed during the preparation of your responses to these discovery requests.

**RESPONSE:** See settlement agreements produced as DC 000001–000051 and emails produced as Porter, W. 001896; Porter, W. 001898; Porter, W. 002762–2763, 2766–2772; and

## REQUEST NO. 16

All documents, records or other tangible things you anticipate or intend to introduce into evidence or present at the trial, hearing or mediation of this matter.

**RESPONSE:** Mr. Catanzaro has not yet identified these materials and will produce them in accordance with the case schedule.

          Respectfully submitted,

          /s/ Barton R. Keyes
| | |
|---|---|
| Rex H. Elliott | (0054054) |
| Charles H. Cooper, Jr. | (0037295) |
| Barton R. Keyes | (0083979) |

Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000
(614) 481-6001 (Facsimile)
rexe@cooperelliott.com
chipc@cooperelliott.com
bartk@cooperelliott.com

Attorneys for Plaintiff
David Catanzaro

STATE OF **PA** )
COUNTY OF **Lackawanna** ) ss:

## VERIFICATION

I, DAVID CATANZARO, declare under penalty of perjury that the following is true and correct:

That I have read and answered the foregoing interrogatories and believe that the matters stated therein are true and correct to the best of my knowledge.

_____
DAVID CATANZARO

SWORN TO BEFORE me and subscribed, in my presence, this 12 day of _May_, 2014.

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KAREN A PAPOCCHIA, NOTARY PUBLIC
CITY OF CARBONDALE, LACKAWANNA COUNTY
MY COMMISSION EXPIRES APRIL 27, 2018

- 19 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Plaintiff's Responses to First Discovery Requests of Defendants Seaman Garson and James Deroche was served on the following counsel of record, by ordinary U.S. mail, postage prepaid, this 15th day of May, 2014:

> Thomas S. Mazanec, Esq.
> Elaine Tso, Esq.
> Mazanec, Raskin & Ryder Co., L.P.A.
> 100 Franklin's Row
> 34305 Solon Road
> Cleveland, Ohio 44139
>
> Attorneys for Defendant
> Wayne D. Porter, Jr.
>
>
> Monica A. Sansalone, Esq.
> Shane A. Lawson, Esq.
> Gallagher Sharp
> Sixth Floor - Bulkley Building
> 1501 Euclid Avenue
> Cleveland, Ohio 44115
>
> Attorneys for Defendants
> Seaman Garson, LLC/LLP and
> James A. Deroche
>
>
> /s/ Barton R. Keyes

20